**Dale E. EDGMON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–16.**

Court of Appeals of Alaska.

June 14, 1985.

Grant Callow, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Dale E. Edgmon was convicted of two counts of manslaughter for the death of two pedestrians caused by an automobile driven by Edgmon while he was intoxicated. AS 11.41.120(a)(1). Prior to sentencing, he moved for an order vacating the convictions. Alaska R.Crim.P. 35(c). Edgmon argued that manslaughter as he committed it is indistinguishable from criminally negligent homicide, so that it is a violation of equal protection to convict him of the former which carries a substantially higher penalty. He also argued that the statutory definition of manslaughter is constitutionally deficient by virtue of its vagueness.[1] After sentencing, Edgmon's

---

1. Edgmon contends that two relevant statutory definitions fail the vagueness test set forth in *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 531 (Alaska 1980) (a statute violates due process of law where reasonable men and women must guess at its meaning). Edgmon argues that the statutory definitions of "intoxicated," AS 11.81.-900(b)(27), and "recklessly," AS 11.81.900(a)(3),

Rule 35 motion was denied. Edgmon renews his arguments on appeal. We affirm.

Edgmon relies on the so-called *Pirkey/Olsen* rule, which provides that equal protection is violated when a statute prescribes different punishments for the same act committed under the same circumstances by persons in like situations. *See State v. Pirkey,* 281 P.2d 698 (Or.1955) (*en banc*); *Olsen v. Delmore,* 295 P.2d 324 (Wash. 1956) (*en banc*). Edgmon recognizes that the United States Supreme Court essentially rejected this argument in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), but vigorously argues that we should adopt it under our state constitution.

 We are satisfied that criminally negligent homicide is not the same as manslaughter under the relevant statutes and that Edgmon's argument would fail even if we were to adopt the *Pirkey/Olsen* rule. Edgmon effectively concedes that there is a difference between manslaughter based on recklessness and criminally negligent homicide. Recklessness requires conscious disregard of a known risk. In contrast, the essence of criminal negligence is failure to perceive the risk. *Compare* AS 11.41.120 (manslaughter) and AS 11.81.900(a)(3) (defining "recklessly") *with* AS 11.41.130 (criminally negligent homicide) and AS 11.81.900(a)(4) (defining "criminal negligence"). Consequently, manslaughter and criminally negligent homicide involve a significant difference in mental state. *See*

*State v. Walton,* 650 P.2d 1264, 1273 (Ariz. App.1982).

 The real thrust of Edgmon's argument is that the section of AS 11.81.900(a)(3) eliminating consideration of voluntary intoxication for purposes of establishing recklessness destroys the statutory distinction between manslaughter and criminally negligent homicide. The state admits on appeal that the prosecution's theory was that Edgmon was in fact not aware of the risk created by his actions but that his unawareness was due solely to his voluntary intoxication. This concession does not in our view totally eliminate the distinction between recklessness and criminal negligence. The state is still obligated to prove that Edgmon, given his faculties, his education, his experience, and his intelligence, would have perceived the risk but for his intoxication. In contrast, peculiarities of a given individual—his or her intelligence, experience, and physical capabilities—are irrelevant in determining criminal negligence since the standard is one of the reasonably prudent person. Thus, the fact that a given defendant did not perceive a risk because he or she was mentally retarded, because he or she had bad eyesight or bad hearing, or because his or her experience had not fitted him or her to appreciate the risk would be irrelevant in proving negligence but highly relevant with regard to recklessness. This would be so whether the given individual was intoxicated or not. Consequently, elimination of intoxication as

fail this test. We disagree. The terms "intoxicated" and "recklessly" as defined in the code are sufficiently clear in the various contexts in which they occur to satisfy due process. *See Neitzel v. State,* 655 P.2d 325, 330–31, 334–35 (Alaska App.1982) (discussing the origin of these definitions in the Model Penal Code and rejecting a related due process challenge to the legislature eliminating consideration of intoxication in determining recklessness).

In a brief aside, Edgmon argues that the term "intoxicated" may be vague because, when interpreted in comparison with other statutes *in pari materia,* it is unclear whether it should receive its meaning in ordinary usage, as a synonym for "drunk" or "excited mentally beyond reason or self-control," definitions which Edgmon quotes from the American College Dictionary, or

whether it should be interpreted to include a person who has a .10 blood-alcohol level. AS 28.35.033. Generally, terms in statutes should be interpreted according to their "common and approved usage" unless they have acquired peculiar meaning by virtue of a legislative definition or judicial construction. *See* AS 01.10.040; *Lynch v. McCann,* 478 P.2d 835, 837 (Alaska 1970). Whether the term "intoxicated" in AS 11.81.900(b)(27) should be construed *in para materia* with the presumption established in AS 28.35.033 is a question of statutory construction which is not directly presented in this case except in connection with Edgmon's due process argument. We need not resolve it here because, *however interpreted,* the term "intoxicated" is not vague whether or not we permit a jury to infer intoxication from a .10 blood-alcohol level.

a basis for a finding that a specific individual did not appreciate a specific risk does not totally destroy the distinction between criminal negligence and recklessness.[2]

The judgment of the superior court is AFFIRMED.

**2.** The commentary to section 2.08 of the Model Penal Code states:

[A]wareness of the potential consequence of excessive drinking on the capacity of human beings to gauge the risks incident to their conduct is by now so dispersed in our culture that we believe it fair to postulate a general equivalence between the risks created by the conduct of the drunken actor and the risks created by his conduct in becoming drunk. Model Penal Code § 2.08, commentary at 9 (Tent. Draft No. 9, 1959). Although under the current statutory scheme the prosecution may indeed have broad discretion to charge either manslaughter or criminally negligent homicide when traffic fatalities occur as the result of drunken driving, this situation is no different from numerous other instances in which the law defines a greater offense in terms of a specific subset of conduct that is also included in a related lesser-included offense. *See, e.g., Hemphill v. State,* 673 P.2d 888, 891 (Alaska App.1983).